**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank J. Grimmelmann, et al., | No. CV-08-1878-PHX-FJM |
| Plaintiffs, | No. CV-08-1757-PHX-FJM |
| vs. | **ORDER** |
| Pulte Home Corporation, et al., | |
| Defendants. | |
| James D. Yulga, et al., | |
| Plaintiffs, | |
| vs. | |
| Pulte Home Corporation, et al., | |
| Defendants. | |

The court has before it defendants' motion for summary judgment (doc. 78) and memorandum in support (doc. 79), plaintiffs' response (doc. 83), and defendants' reply (doc. 86). We also have before us plaintiffs' motion to certify class (doc. 66) and memorandum in support (doc. 73), defendants' response (doc. 76), and plaintiffs' reply (doc. 81).

**I**

Plaintiffs Frank J. Grimmelmann, James D. Yulga, Roger E. Phillips, Stillman D.

Goodman, and Debra Callies, on behalf of themselves and a putative class of similarly situated homeowners, sued defendants Del Webb Corporation, its affiliates, and its successor, Pulte Home Corporation (collectively, "Pulte") alleging violation of Arizona's Consumer Fraud Act, A.R.S. § 44-1522, and negligent misrepresentation. Pulte constructed a master-planned housing development known as Anthem, a community of approximately 10,500 homes. Pulte, along with the Citizens Water Services Company of Arizona entities, and their successor in interest, Arizona-American Water Company (collectively, the "Water Company"), designed and constructed the water and wastewater treatment infrastructure for Anthem residences (the "Water Facilities").

Under an agreement dated September 29, 1997 (the "Infrastructure Agreement"), Pulte agreed to advance to the Water Company approximately $80 million for the construction of the Water Facilities. The Infrastructure Agreement also provided that the Water Company would reimburse Pulte for the majority of its construction advances.

Plaintiffs claim that at the time Pulte negotiated the Infrastructure Agreement, it knew that future utility rate hikes would be required in order to permit the Water Company to repay the costs advanced by Pulte. However, Pulte failed to disclose to Anthem home purchasers the existence of the Infrastructure Agreement and the fact that they would bear the burden of repaying Pulte through future rate hikes. The homeowners believed, and some were told, that all utility costs were included in the purchase price of their homes. Plaintiffs claim that Pulte violated its duty to comply with Arizona's subdivision and public reporting statute, A.R.S. § 32-2181, which required it to report the estimated costs related to the improvements, facilities, and utilities "that will be borne by purchasers of lots in the subdivision." A.R.S. §§ 21-2181(A)(18), (19) and 32-2183(A) ("Subdivision Reporting Act").

Beginning in June 2008, after approval of a rate increase by the Arizona Corporation Commission, thousands of Anthem homeowners began paying significantly higher water rates allegedly due to the Water Company's obligation to repay Pulte for the installation of the Water Facilities. According to plaintiffs, additional rate increases are likely.

Plaintiffs filed this action asserting (1) that Pulte violated Arizona's Consumer Fraud

1 | Act, A.R.S. § 44-1522, by concealing material facts regarding the repayment of the
2 | installation costs of the Water Facilities; and (2) a claim of negligent misrepresentation for
3 | Pulte's failure to properly disclose to Anthem home purchasers that they would ultimately
4 | have to pay for the installation of the Water Facilities through utility rate hikes.

## II. Motion for Summary Judgment

### A. Statute of Limitations

Arizona's Consumer Fraud Act ("ACFA") makes unlawful the use "of any deception, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522. "Merchandise" is defined to include "real estate." Id. § 44-1521(5). Claims under the ACFA must be filed no later than one year from the date that the cause of action accrues. Id. § 12-541(5). Pulte argues that plaintiffs failed to satisfy the one-year statute of limitations and therefore the ACFA claim must be dismissed as untimely.

The Yulga plaintiffs filed their complaint on August 28, 2008. Grimmelmann filed his complaint on October 14, 2008. Pulte contends, however, that as early as June 2006, Anthem residents knew that the Water Company had filed a rate increase request, that the request was based in substantial part on the Water Company's obligation to repay advances made by Pulte for water and sewer infrastructure, and that Pulte did not disclose to the home purchasers that they would bear the burden of repaying Pulte through future utility rate increases. According to Pulte, plaintiffs knew or should have known of the basis of their claim as early as June 2006, and therefore the ACFA claim is time-barred.

In general, a claim accrues for limitations period purposes "when one party is able to sue another." Gust, Rosenfeld & Henderson v. Prudential Ins. Co., 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995). Before the limitation period begins to run, a plaintiff must "possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." Walk v. Ring, 202 Ariz. 310, 316, 44 P.3d 990, 996 (2002) (emphasis and quotation omitted).

To state a cause of action under the ACFA, a plaintiff must allege (1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise, and (2) the consumer's consequent and proximate injury. Kuehn v. Stanley, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004); Dunlap v. Jimmy GMC of Tucson, Inc., 136 Ariz. 338, 342, 666 P.2d 83, 87 (Ct. App. 1983). In other words, before a cause of action for statutory consumer fraud can be brought, a party "must have been damaged by the prohibited practice." Peery v. Hansen, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ct. App. 1978). A misrepresentation alone will not support a claim under the ACFA; actual injury or damages must occur. "An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." Kuehn, 208 Ariz. at 129, 91 P.3d at 351.

Plaintiffs concede that they knew more than a year before filing their complaints that their utility rates might increase because of the Water Company's repayment obligation. They argue, however, that they did not suffer an actionable injury until June 13, 2008, when the Arizona Corporation Commission actually approved the rate hike requested by the Water Company. Plaintiffs contend that before June 13th, any claim was inchoate and would have been subject to dismissal.

Regulated utilities cannot change their rates without the approval of the Arizona Corporation Commission. Before the Commission ruled on the Water Company's rate increase request, plaintiffs' damages were speculative and contingent. If the Commission had rejected the Water Company's attempt to pass the infrastructure costs on to the homeowners, the plaintiffs would not have been damaged and therefore would have had no claim. We conclude that because plaintiffs suffered no actionable damages until the Commission approved the rate increase, the plaintiffs' ACFA cause of action did not accrue until June 13, 2008. Because both the Grimmelmann and Yulga complaints were filed within one year of the Commission's decision, the ACFA claim is timely. Pulte's motion for summary judgment on the issue of statute of limitations is denied.

### B. Subsequent Purchasers

Pulte also seeks summary judgment with respect to the ACFA and negligent

- 4 -

1 misrepresentation claims asserted by the subsequent purchasers of Anthem homes. Pulte
2 contends that plaintiffs who are not alleged to have dealt directly with Pulte and who neither
3 received nor relied on the challenged communication (specifically, the subdivision public
4 reports), have no standing to assert either an ACFA or negligent misrepresentation claim.

As we previously noted, before a private party can assert a claim under the ACFA, "he must have been damaged by the prohibited practice." Peery, 120 Ariz. at 269, 585 P.2d at 577. Generally, "[a] prerequisite to such damages is reliance on the unlawful acts." Id. Therefore, plaintiffs cannot recover under the ACFA "unless they prove that they relied on the defendant's unlawful practice and were damaged thereby." Arizona v. Hameroff, 180 Ariz. 380, 383 n.4, 884 P.2d 266, 269 n.4 (Ct. App. 1994); Dunlap, 136 Ariz. at 342, 666 P.2d at 87 ("The elements of a private cause of action under the [AFCA] are a false promise or misrepresentation . . . and the *hearer's* consequent and proximate injury.") (emphasis added).

Reliance is also generally a prerequisite to stating a claim for negligent misrepresentation. Arizona has recognized the tort of negligent misrepresentation as defined by Restatement (Second) of Torts § 552(1), which provides that one who "supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information."

Plaintiffs argue, however, that reliance is not a requisite element of proof for either the ACFA or negligent misrepresentation claims in this case because the "fraud" at issue arose, not from an affirmative misrepresentation, but from Pulte's failure to disclose material information, specifically the fact that the purchase price of the Anthem homes did not include the cost of the Water Facilities.

An affirmative misrepresentation is not a necessary element of either an ACFA or negligent misrepresentation claim. "Concealment, suppression or omission" are alternative bases for liability under the ACFA. A.R.S. § 44-1522. Similarly, "[n]egligent misrepresentation may be by omission or nondisclosure of material facts as well as by overt misrepresentation." Alaface v. Nat'l Inv. Co., 181 Ariz. 586, 598 n.3, 892 P.2d 1375, 1387

- 5 -

n.3 (Ct. App. 1994); see also Restatement (Second) of Torts § 551.

However, even if we accept plaintiffs' characterization of their claims as strictly omissions, the subsequent purchasers fail to state a claim. Under both the ACFA and the negligent misrepresentation causes of action, an omission is actionable only when there is a duty to communicate. "Where the defendant has a legal or equitable obligation to reveal material information, his failure to do so is equivalent to a misrepresentation." Haisch v. Allstate Ins. Co., 197 Ariz. 606, 610, 5 P.3d 940, 944 (Ct. App. 2000); see also Schock v. Jacka, 105 Ariz. 131, 133, 460 P.2d 185, 187 (1969) ("A suppression of the truth is not always actionable fraud . . . [t]here must be a concealment of facts which the party is under a legal or equitable obligation to communicate."); Restatement (Second) of Torts § 551 (Nondisclosure can amount to actionable negligent misrepresentation, "but only if [a party] is under a duty . . . to exercise reasonable care to disclose to the other before the transaction is consummated.").

Pulte's duty to communicate in the instant case is defined by its obligations under the Subdivision Reporting Act, A.R.S. § 32-2181; see also Alaface, 181 Ariz. at 595, 892 P.2d at 1384 (concluding that a "person who violates [the Subdivision Reporting Act] is guilty of negligence *per se*"). Under the Act, a subdivider has a duty to report, among other things, the estimated costs related to the improvements, facilities, and utilities "that will be borne by purchasers of lots in the subdivision." A.R.S. § 21-2181(A)(18), (19). The subdivider is required to "make the report available to each prospective customer," and "furnish each buyer or lessee with a copy before the buyer or lessee signs any offer to purchase or lease." Id. § 32-2183(A).

Pulte's duty to communicate ran to "each prospective *customer*." A.R.S. § 32-2183(A). "Customer" is commonly defined as "a person who purchases goods or services from another." Random House Dictionary 380 (2d ed. 2009). The subsequent purchasers in this case did not enter into any business transaction with Pulte. They did not purchase Anthem homes from Pulte. They were not Pulte's "customers." Pulte had no statutory duty to provide a copy of the public report to subsequent purchasers. Subdividers are typically

- 6 -

unaware of the identity of subsequent purchasers and therefore cannot reasonably be expected to disclose information to them. Because plaintiffs are unable to establish that subsequent purchasers either received or relied on an affirmative misrepresentation or that Pulte had any duty to disclose information to them, no claim is stated on behalf of these putative class members. Pulte's motion for summary judgment on the issue of subsequent purchasers is granted.

### III. Motion for Class Certification

Plaintiffs seek to certify a class of Anthem home buyers defined as: "All current owners of Anthem Country Club and Anthem Parkside homes whose homes were developed by Pulte, and whose homes were subject to the subdivision public reports in which Pulte failed to disclose that homeowners would be responsible for repayment of the water infrastructure costs." Motion at 5. Because we have already concluded that current owners who did not purchase their homes directly from Pulte have failed to state a claim, we limit the proposed class definition to those current owners who were original purchasers of Anthem homes.

In order to support a motion to certify a class, a plaintiff must satisfy the requirements of both Rule 23(a) and (b), Fed. R. Civ. P. Under Rule 23(a), plaintiffs must establish (1) numerosity of the parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses between the class representatives and the class; and (4) adequacy of representation. Plaintiffs must then show that the proposed class action fits within at least one of the three categories of class actions described in Rule 23(b).

Before we will certify a class, we must "perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581 (9th Cir. 2010) (en banc) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160-61, 102 S. Ct. 2364, 2372 (1982)). In certain cases, a preliminary inquiry into the merits of an action is appropriate to the extent necessary to determine whether Rule 23 requirements are met. Id. "[W]hether the suit is appropriate for class resolution must be actually demonstrated, not just alleged, to the district court's satisfaction." Id. at 590.

### A. Numerosity

A class is sufficiently numerous if joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Here, plaintiffs' proposed class of original purchasers who are also current owners of Anthem homes is comprised of more than 3,000 members. Pulte does not dispute that this is more than sufficient to satisfy the numerosity test.

### B. Commonality

A class has sufficient commonality if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, plaintiffs must establish that there is "some shared legal issue or a common core of facts." Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010). This factor is construed permissively and is satisfied in this case. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, common legal issues include whether Pulte owed a duty to disclose to home buyers that the cost of the Water Facilities was not included in the purchase price of their homes, and if so whether Pulte breached that duty. Common factual issues include the extent to which Pulte made the required disclosures and whether any failure to disclose caused damage to home buyers. Plaintiffs have sufficiently demonstrated the existence of shared legal and factual issues in satisfaction of the commonality requirement.

### C. Typicality

Under the "typicality" prong of Rule 23(a)(3), plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Again, the standard is permissive. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Id. at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Plaintiffs contend that their claims are typical of the class because each putative class

member suffered the same or similar injury as a result of Pulte's common course of conduct. Specifically, Pulte treated each class member similarly by failing to disclose truthful information about the payment of water infrastructure costs and failed to properly disclose in the subdivision public reports that the home buyers would ultimately bear such costs.

Pulte argues, however, that plaintiffs' claims are not typical of those of the class because the home buyers received numerous versions of the subdivision public reports, with significant language differences relating to water and sewer services. Some of these public reports are alleged to have affirmatively and falsely represented to home purchasers that the cost of installing the Water Facilities was included in the price of their homes. Other public reports did not contain this express language. Pulte also argues that some of the home purchasers read their public reports, others did not, and some of the home buyers contacted the utility company, while others did not. Pulte contends that the numerous inconsistencies among the various claims preclude any finding that the named plaintiffs' claims are typical of the class.

For purposes of the typicality test, we look not to the specific facts of plaintiffs' claims, but only to the nature of the claim or defense of the class representative. Id. Because the injuries plaintiffs claim to have suffered occurred in each case as a result of Pulte's alleged failure to disclose the same information, we conclude that their claims are sufficiently typical to satisfy Rule 23(a)(3)'s permissive standard.

### D. Adequacy

A plaintiff must also demonstrate that he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). We will consider: (1) whether the named plaintiffs and their counsel have any conflicts of interest with the proposed class, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020. Plaintiffs and their counsel maintain that they have no conflicts of interest with members of the class and that they will continue to prosecute this action vigorously on behalf of the class as a whole. Noting the absence of any objection by Pulte, we conclude that plaintiffs have met their burden under Rule 23(a)(4).

## E. Rule 23(b)(3)

### 1. Predominance

Plaintiffs must not only satisfy the four requirements of Rule 23(a), but also show that their proposed class action fits within one of the three kinds of class actions listed in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. 23(b)(3). The predominance inquiry considers "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997). Rule 23(b)(3) requires a court to formulate "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Dukes, 603 F.3d at 593 (citation and quotation omitted). The Ninth Circuit has explained that "[i]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted).

Pulte contends that plaintiffs cannot satisfy the predominance test because each putative class member must prove individual reliance as an element of both the ACFA and negligent misrepresentation claims. According to Pulte, the need for a case-by-case inquiry into each class member's reliance renders these claims unsuitable for class certification. We agree.

The Ninth Circuit recently instructed that courts should look to state law to determine whether individual issues of reliance arising out of a state law fraud claim predominate over common issues. See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (holding that the "dispositive issue is thus an issue of Hawaii state law, namely whether Hawaii's Deceptive Practices Act requires a showing of individualized reliance"). Accordingly, we turn to Arizona law to determine whether actual reliance is a necessary element of proof in each of the claims asserted in this case.

In order to succeed on a claim under the ACFA, a plaintiff must show (1) a false

- 10 -

promise or misrepresentation made in connection with the sale or advertisement of merchandise, and (2) consequent and proximate injury resulting from the promise. <u>Kuehn</u>, 208 Ariz. at 129, 91 P.3d at 351. The requisite "injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." <u>Id.</u> Therefore, "reliance is a required element under Arizona's consumer fraud statute." <u>Id.</u>

Plaintiffs argue that <u>Kuehn</u> and other Arizona cases that have required proof of actual reliance are distinguishable from the instant case because those cases have considered the claim only in the context of affirmative misrepresentations. <u>See, e.g.</u>, <u>id.</u> (affirmative misrepresentations); <u>Correa v. Pecos Valley Dev. Corp.</u>, 126 Ariz. 601, 617 P.2d 767 (Ct. App. 1980) (same); <u>Peery</u>, 120 Ariz. 266, 585 P.2d 574 (same); <u>Stratton v. Am. Med. Sec., Inc.</u>, 266 F.R.D. 340, 349 (D. Ariz. 2009) (requiring individual proof of reliance but distinguishing case from one involving nondisclosures). Here, plaintiffs contend that their claims are based primarily on a failure to disclose material information, rather than affirmative misrepresentations. They argue that this distinction is important because requiring an individual to prove that he actually relied on a fact that was never disclosed is an illogical, if not impossible, burden. Instead, plaintiffs ask us to apply a "presumption of reliance" adopted by some courts in the context of securities law violations arising from omissions of material information.

In <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 1472 (1972), the Court held, in the context of securities law violations, that a "presumption of reliance" applied in cases that primarily involve "a failure to disclose." "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." <u>Id.</u> In <u>Binder v. Gillespie</u>, 184 F.3d 1059 (9th Cir. 1999), the Ninth Circuit also applied a presumption of reliance in a case involving securities fraud, and emphasized that the presumption "should be confined to cases that *primarily* allege omissions." <u>Id.</u> at 1064 (emphasis added).

The presumption of reliance has since been applied to satisfy Rule 23(b)(3)'s predominance requirement, but only in fraud cases based on omissions. <u>See, e.g.</u>, <u>Farmers</u>

1  Ins. Exch. v. Benzing, 206 P.3d 812 (Colo. 2009) (and cases cited therein). In "mixed
2  claims" where plaintiffs allege both omissions and misrepresentations, courts have declined
3  to apply the presumption. See Poulos v. Caesars World, Inc., 379 F.3d 654, 666 (9th Cir.
4  2004) (civil RICO claims alleging a mix of omissions and misrepresentations were not
5  entitled to a presumption).

6  Pulte argues that plaintiffs' allegations center on both omissions and affirmative
7  misrepresentations and thus are not amenable to a presumption of reliance. Pulte points out
8  that numerous versions of the subdivision public report were presented to home buyers, some
9  of which contained language affirmatively representing that the cost of installing the Water
10  Facilities was included in the purchase price of the homes. Other reports were silent
11  regarding Water Facility costs. Although plaintiffs now frame their claims as primarily
12  asserting a failure to disclose, their complaints allege numerous instances of affirmative
13  misrepresentations. In both complaints the plaintiffs assert that reliance in based in part on
14  the "Pulte Defendants *false[ ]* represent[ation] to home purchasers that the cost of installing
15  the water infrastructure facilities was included in the price of their homes," Grimmelmann
16  Complaint ¶ 39; Pulte Complaint ¶ 26. Both complaints also generally allege that
17  "Defendants made material omissions or misrepresentations in connection with the sale of
18  the homes within Anthem." Grimmelmann Complaint ¶ 58; Pulte Complaint ¶ 34. The
19  Grimmelmann complaint asserts that "Pulte actually disclosed to home buyers . . . that there
20  were no construction costs to be borne by the home buyer and home-owner beyond the listed
21  purchase price." Id. ¶¶ 36, 65.

22  Because plaintiffs' ACFA and negligent misrepresentation claims are best described
23  as "mixed claims" of omissions and affirmative misrepresentations, the presumption of
24  reliance is not available in the context of a class action. See Poulos, 379 F.3d at 666 (stating
25  that courts typically apply a presumption of reliance only in cases involving securities fraud,
26  and then only in cases "primarily involving a failure to disclose"). Although the parties agree
27  that *none* of the home buyers were informed that they would bear the cost of Water Facilities
28  through increased utility rates, the fact that some class members received affirmative

- 12 -

misrepresentations that all utility costs were included in the purchase price of the home creates the need for an individualized assessment of reliance and renders this case unsuited for class treatment.

We conclude that plaintiffs have failed to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members as required by Rule 23(b)(3), Fed. R. Civ. P. Therefore, the motion for class certification is denied (doc. 66).

Even if we had concluded that plaintiffs' claims are primarily based on omissions rather than affirmative misrepresentations, we would nevertheless conclude that plaintiffs have failed to demonstrate that common issues predominate. In order to raise a presumption of reliance, plaintiffs must show not only that Pulte had a duty to disclose, but that it failed to disclose *material* facts. A fact is "material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question." Hill v. Jones, 151 Ariz. 81, 85, 725 P.2d 1115, 1119 (Ct. App. 1986).

Here, plaintiffs make no attempt to demonstrate that the information related to the Water Facility costs would have materially affected a reasonable buyer's decision to purchase a home in Anthem. For example, plaintiffs present no testimony that they themselves would not have purchased an Anthem home if they had known that their utilities rates would significantly increase. Plaintiffs state only that "[s]ince June 2008, [they] began paying a significantly higher water rate." Phillips Decl. ¶ 7; Grimmelmann Decl. ¶ 5; Pulte Decl. ¶ 7. Nor do plaintiffs disclose the extent to which rates have already increased, or attempt to project the amount of future rate increases. Instead, they allege in their Complaint that "the damages suffered by individual Class members, while not inconsequential, may be relatively small." Grimmelmann Complaint ¶ 54. Without some showing, we are unable to conclude that Pulte's alleged omission was material, and without a showing of materiality, a presumption of reliance is not available.

## IV

**IT IS ORDERED GRANTING IN PART** (subsequent purchasers) **AND**

**DENYING IN PART** (statute of limitations) Pulte's motion for summary judgment (doc. 78).

**IT IS FURTHER ORDERED DENYING** plaintiffs' motion for class certification (doc. 66).

We note that denial of Rule 23 class certification does not divest this court of jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453. See <u>United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.</u>, 602 F.3d 1087, 1089 (9th Cir. 2010).

DATED this 9th day of July, 2010.

                *Frederick J. Martone*
                Frederick J. Martone
                United States District Judge