1  **WO**

2

3

4

5                        **NOT FOR PUBLICATION**

6            IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9   Frank J. Grimmelmann, et al.,          )   No. CV-08-1878-PHX-FJM
                                            )   No. CV-08-1757-PHX-FJM
10              Plaintiffs,                 )
                                            )   **ORDER**
11  vs.                                     )
                                            )
12                                          )
    Pulte Home Corporation, et al.,         )
13                                          )
                Defendants.                 )
14                                          )
    _____   )
15                                          )
    James D. Yulga, et al.,                 )
16                                          )
                Plaintiffs,                 )
17                                          )
    vs.                                     )
18                                          )
    Pulte Home Corporation, et al.,         )
19                                          )
                Defendants.                 )
20                                          )
    _____   )
21

22
          The court has before it defendants' second motion for summary judgment (doc. 116)
23
    and memorandum in support (doc. 117), plaintiffs' response (doc. 127), defendants' reply
24
    (doc. 130); plaintiffs' motion for summary judgment (doc. 119), defendants' response (doc.
25
    124), and plaintiffs' reply (doc. 132). We also have before us plaintiffs' motion to strike
26

27

28

1   expert reports (doc. 126) and defendants' response (doc. 131).[1]

2                                        **I**

3          Plaintiffs purchased homes from Del Webb Corporation, its affiliates, or its successor

4   in interest Pulte Home Corporation (collectively, "Pulte") in a housing development known

5   as Anthem. Pulte, along with the Citizens Water Services Company of Arizona entities, and

6   their successor in interest, Arizona-American Water Company (collectively, the "Water

7   Company"), designed and constructed the water and wastewater treatment infrastructure

8   ("water facilities") for the Anthem development. Pursuant to an agreement dated September

9   29, 1997 (the "Infrastructure Agreement"), Pulte agreed to advance to the Water Company

10  between $80 and $100 million for construction of the water facilities. The Infrastructure

11  Agreement provided that the Water Company would reimburse Pulte for its construction

12  advances.

13         Plaintiffs claim that at the time Pulte entered into the Infrastructure Agreement it knew

14  that future utility rate hikes, borne by home purchasers, would be required to enable the

15  Water Company to reimburse Pulte's construction advances. However, Pulte did not disclose

16  to Anthem home purchasers the existence of the Infrastructure Agreement, or the fact that

17  they would bear the burden of repaying Pulte through future utility rate increases. The

18  homeowners believed, and some were told, that all costs related to the water facilities were

19  included in the purchase price of their homes. Beginning in June 2008, after approval by the

20  Arizona Corporation Commission, homeowners began paying significantly higher utility

21  rates because of the Water Company's obligation to repay Pulte. Plaintiffs contend that

22  additional, significant rate hikes are likely. They allege that to date the Water Company has

23  refunded approximately $87 million to Pulte for installation of the water facilities. Plaintiffs'

24

25  _____

26         [1]We deny plaintiffs' motion to strike. The Local Rules of Practice provide that
    objections to evidence offered in support of or in opposition to a motion must be presented
27  in the objecting party's responsive or reply memorandum, or in response to a statement of
    facts, not in a separate motion to strike. LRCiv 7.2(m)(2). Accordingly, plaintiffs' motion
28  to strike is denied (doc. 126).

Response at 2; PSOF, ex. 2 at 81-82.

Plaintiffs filed this action, asserting a claim under Arizona's Consumer Fraud Act, A.R.S. § 44-1522, and common law negligent misrepresentation. They contend that Pulte violated its duty to comply with Arizona's subdivision and public reporting statute, A.R.S. § 32-2181 ("Subdivision Reporting Act"), which requires certain disclosures by subdividers to purchasers. Specifically, the Act requires a subdivider of land to disclose to purchasers of lots,

> 18. A true statement of the nature of any improvements to be installed by the subdivider, the estimated schedule for completion and <u>the estimated costs related to the improvements that will be borne by purchasers of lots in the subdivision</u>.

> 19. A true statement of the availability of sewage disposal facilities and other public utilities, including water, electricity, gas and telephone facilities in the subdivision, the estimated schedule for their installation, and <u>the estimated costs related to the facilities and utilities that will be borne by purchasers of lots in the subdivision</u>.

A.R.S. § 32-2181(A)(18) & (19) (emphasis added).

Plaintiffs contend that the Act imposed on Pulte a duty to disclose to Anthem home buyers that they would bear the cost of the water facilities through utility rate increases and that the failure to disclose this information constitutes negligent misrepresentation and a violation of Arizona's Consumer Fraud Act, A.R.S. § 44-1522.

## II

In its motion for summary judgment, Pulte argues that plaintiffs' claims fail as a matter of law because (1) Pulte had no duty to disclose future estimated utility rates, (2) plaintiffs have failed to propound any competent, expert or factual evidence to establish damages, and (3) because defendants Del Webb Corporation and The Villages at Desert Hills, LLC, sold no homes and provided no subdivision public reports to home purchasers, these entities are entitled to judgment in their favor.

Plaintiffs cross move for summary judgment contending that the plain language of the Subdivision Reporting Act imposes on defendants a duty to disclose that Anthem home purchasers would bear the burden of repaying the costs of the water facilities, and that the

- 3 -

defendants breached that duty by failing to disclose that information.

## A

The central issue before us is whether Pulte had a duty to disclose that homeowners would pay for infrastructure costs via future utility rate increases. Whether a defendant owes the plaintiff a duty of care is a threshold question of law for the court to decide. Gipson v. Kasey, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). The duty and standard of care governing the conduct of a seller of subdivided lands is set forth in the Subdivision Reporting Act. Alaface v. National Inv. Co., 181 Ariz. 586, 596, 892 P.2d 1375, 1385 (Ct. App. 1994). "The subdivision reporting statutes specify an affirmative duty for certain sellers of real estate to obtain specified information and supply it to the purchaser. A person who violates a statute enacted for the protection and safety of the public is guilty of negligence *per se*." Id. The Act broadly requires a subdivider to disclose to home buyers "estimated costs related to improvements [and facilities] that will be borne by purchasers." A.R.S. § 32-2181(A)(18), (19). Subsections (18) and (19) demonstrate an intent by the legislature to provide consumers with information about estimated costs associated with subdivision infrastructure in order to eliminate the unexpected financial burden of costs not included in the purchase price and not contemplated at the time of purchase.

Despite the plain language of the Act, Pulte argues that its disclosure obligation should be limited to "the initial, actual, out-of-pocket costs that a purchaser pays [to obtain initial service] at the time of purchase, closing or occupancy of the residence." Pulte Motion at 5. We reject Pulte's argument for several reasons.

Our primary task in interpreting a statute is to determine and give effect to the legislature's intent. Mejak v. Granville, 212 Ariz. 555, 557, 136 P.3d 874, 876 (2006). The best indicator of that intent is the statutory language itself. Id. "When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation." Kent K. v. Bobby M., 210 Ariz. 279, 283, 110 P.3d 1013, 1017 (2005).

The Subdivision Reporting Act does not limit the disclosure obligation to those

facility and improvement costs that are payable at closing. Instead, it plainly requires disclosure of facility and improvement "costs that will be borne by purchasers of lots." There are no express qualifications or limitations to this disclosure obligation.

While the clear language of the statute is dispositive, we note that the regulations and the forms developed by the Arizona Department of Real Estate ("ADRE"), the department charged with administering the Subdivision Reporting Act, fail to support Pulte's interpretation. The relevant regulations require three disclosures:

> (1) "[t]he estimated cost a lot purchaser will be required to pay for completion of the water lines to the purchaser's lot line," A.A.C. § R4-28-A1205(7);
>
> (2) "[t]he estimated cost a lot purchaser will pay for completion of the water lines from the lot line to a dwelling," A.A.C. § R4-28-A1205(8); and
>
> (3) "[o]ther costs or requirements before the lot purchaser receives water service, including current service charges, hookup fees, turn-on fees, meter fees, and development fees." A.A.C. § R4-28-A1205(9).

See also A.A.C. § R4-28-A1206(6) - (8) (identical disclosure requirements related to sewage disposal).

Pulte would have us focus only on subsection (9), which requires disclosure of costs imposed at or near closing in order to receive initial water service. But the regulations also require information related to costs imposed on lot purchasers for completion of the utility line to their lot, and for completion of the utility from the lot to their dwelling. A.A.C. § R4-28-A1205(7) & (8). These disclosure requirements are separate and distinct from the requirement to disclose costs related to initial hook-up fees. Pulte's argument that the statute and regulations only require disclosure of costs incurred by a lot purchaser *before* he receives initial water service, renders meaningless sections (7) and (8) of the regulations. We will not interpret a statute or regulation "in a manner that renders them "superfluous, contradictory, void or insignificant." Devenir Assoc. v. City of Phoenix, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). Even if the regulations could be construed along Pulte's lines, the language of the statute, of course, controls. The ADRE is without power to ignore the law.

As part of the application process, Pulte completed a questionnaire developed by the ADRE, the answers to which were used to complete a subdivision public report. Consistent

with the regulations, the questionnaire asks subdividers to provide information relating to "[e]stimated costs lot purchaser will have to pay for completion of facilities to his lot line." Pulte responded, "Cost included in the price of the home." The questionnaire then asked for information relating to the "[e]stimated costs lot purchaser will have to pay for completion of facilities from lot line to dwelling." Again Pulte responded, "Cost included in the price of the home." Finally, the questionnaire asked Pulte, "[u]pon completion of facilities, what other costs or requirements exist before lot purchaser can receive service?" Pulte responded, "A service establishment fee for water and sewer facilities is $60.00 plus tax at this time." PSOF, ex. 6 at 17. Not only do the regulations and questionnaire request information related to hook-up fees to initiate utility service, they also require disclosure of costs that purchasers will be required to pay for completion of facilities to their property. Pulte recognized these distinctions by its varying responses to the questions.

We reject Pulte's reliance on the expert report of Roy Tanney, former ADRE assistant commissioner of development, as an authoritative arbiter of the interpretation of the Subdivision Reporting Act. See DSOF, ex. A ("Tanney Report"). Mr. Tanney's conclusion that Pulte's disclosures satisfied its obligations under the Act, Tanney Report § 18, is the ultimate legal question presented in this case. An expert's opinion regarding legal conclusions is improper and is entitled to no weight. See Webb v. Omni Block, Inc., 216 Ariz. 349, 354, 166 P.3d 140, 145 (Ct. App. 2007).

We also accord no deference to Mr. Tanney's opinion that the Subdivision Reporting Act only requires disclosure of costs imposed to obtain *initial* utility service. Tanney Report § 13. Not only is Mr. Tanney's interpretation an improper legal conclusion that is undermined by the language of the statute and regulations, but deference should only be afforded where a state agency has "consistently interpreted a statute," and there is an "absence of clear statutory guidance to the contrary." Phelps Dodge Corp. v. Arizona Dept. of Water Res., 211 Ariz. 146, 152-53, 118 P.3d 1110, 1116-17 (Ct. App. 2005); see also Siler v. Arizona Dept. of Real Estate, 193 Ariz. 374, 379-80, 972 P.2d 1010, 1015-16 (Ct. App. 1998) ("We need not accept . . . the [ADRE] Commissioner's interpretations of statutory

language.").

There is no formal, consistent statutory interpretation by an agency in this case. Instead, we are presented with the opinion of one former assistant commissioner of the ADRE. Mr. Tanney testified that his opinion regarding disclosure obligations was "his position," and that he had no discussion with anyone else at the ADRE regarding that position. PSOF, ex. 4 (Tanney Depo at 38). He further testified that, during his tenure at ADRE, his only experience with disclosure of a water company's obligation to refund a developer's infrastructure costs was limited to the present case. Id. at 43-44. There is no showing of a consistent interpretation by an agency of the Subdivision Reporting Act or its regulations.

Finally, we reject Pulte's attempt to mischaracterize plaintiffs' claim by arguing that it had no duty to disclose "information about future utility rates." Pulte Memorandum at 4. This characterization distorts the relevant inquiry. The issue is not whether a developer has a duty to predict future utility rates, but whether Pulte was required to disclose the "estimated costs related to the improvements [and facilities] that will be borne by purchasers," A.R.S. § 32-2181(A)(18) & (19), even when those costs are imposed through utility rate increases. Notwithstanding the method by which these costs are levied, they are nevertheless "costs that will be borne by home buyers," and accordingly fall within the broad disclosure requirement of the statute.

This disclosure obligation would not require the "wildly speculative calculation" of future utility costs, as Pulte suggests. Pulte's Response at 5. Instead, Pulte was required to disclose that, by virtue of an agreement between Pulte and the Water Company, purchasers would bear the burden of paying for infrastructure costs of up to $100 million through utility rate increases. The fact that Pulte could not accurately predict the cost that each purchaser would bear did not relieve Pulte of its obligation to tell home buyers that they would bear the costs, whatever they were.

Mindful that "[l]aws governing the sale of real estate are to be liberally interpreted to protect the public," Siler, 193 Ariz. at 383, 972 P.2d at 1019, we conclude that Pulte had a

duty under the Subdivision Reporting Act to disclose that homeowners would bear the costs of improvements and facilities through future utility rate increases. It is undisputed that Pulte did not make that disclosure and accordingly we conclude that it breached its statutory duty.

**B**

Pulte also argues that it is entitled to summary judgment because plaintiffs' claim for damages is not supported by any admissible evidence but is based only on speculation. Specifically it argues that there is no evidence of the extent to which the rate increases already approved by the Arizona Corporation Commission are the result of infrastructure reimbursement payments. It contends that expert testimony is required in order to establish the amount of damages, but that plaintiffs have failed to identify an expert witness in support of their claim.

Generally, "once the right to damages has been established, uncertainty as to amount of damages will not preclude recovery." Nelson v. Cail, 120 Ariz. 64, 67, 583 P.2d 1384, 1387 (Ct. App. 1978). However, damages cannot be based on "conjecture or speculation." Gilmore v. Cohen, 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963). The party seeking damages must prove them with "reasonable certainty," by providing "some basis for estimating his loss." Id.

Pulte representative Ben Dutton testified that Pulte has been reimbursed by the Water Company in the approximate amount of $87 million. See PSOF, ex. 2 at 81-82. Evidence is presented that the Water Company's sole source of revenue, and accordingly the sole source of reimbursement payments, is from utility rate payers. PSOF, ex. 3 at 15. Evidence also establishes that the rate increases already imposed are in part attributable to the infrastructure reimbursement payments. PSOF on Cross Motion, ex. 2 at 59.

We cannot conclude on this motion for summary judgment that plaintiffs have no reasonable basis upon which to establish damages. Pulte's motion for summary judgment on the issue of damages is denied.

**C**

Finally, Pulte argues that Del Webb Corporation ("Del Webb") and The Villages at Desert Hills, Inc. ("The Villages") are not proper defendants in this action. It argues that Del Webb and The Villages sold no homes, were not "subdividers," and made no representations in a public report, and therefore cannot be liable for the alleged claims. Plaintiffs counter that because Del Webb and The Villages were parties to the Infrastructure Agreement, and because it is the failure to disclose this agreement that forms the basis of this case, they are proper defendants in this case.

The Villages was listed as the "developer" in the Infrastructure Agreement. PSOF, ex. 10. Through merger and name change, The Villages is now known as Anthem Arizona, LLC. Id., ex. 8 at 13-14, 16. Anthem Arizona, LLC, remains a defendant in this action. Given that The Villages is merely a former corporate name; it is not a proper defendant in this action and is dismissed.

Prior to its acquisition by Pulte Homes, Inc., Del Webb was the parent of defendant Anthem Arizona, LLC. Id. at 15-16. Plaintiffs do not dispute that Del Webb sold no homes and filed no public reports. Plaintiffs' causes of action are based on a duty to disclose. Without such a duty, the claims against Del Webb fail. We do not disregard the separate corporate structure of a parent entity without some showing that the subsidiary is a mere instrumentality of the parent. See Oldenburger v. Del E. Webb Dev. Co., 159 Ariz. 129, 134, 765 P.2d 531, 546 (Ct. App. 1988). No such showing is made here.

Accordingly, it is ordered granting Pulte's motion for summary judgment in favor of defendants Del Webb Corporation and The Villages at Desert Hills, LLC.

**III**

**IT IS ORDERED GRANTING** plaintiffs' motion for summary judgment on the issues of duty and breach (doc. 119).

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Pulte's second motion for summary judgment (doc. 116). The motion is granted to the extent that it seeks summary judgment in favor of defendants Del Webb Corporation and The Villages

- 9 -

1  at Desert Hills, LLC.  It is denied to the extent that it seeks judgment in its favor on the issues

2  of duty, breach, and damages.

3  **IT IS FURTHER ORDERED DENYING** plaintiffs' motion to strike (doc. 126).

4  DATED this 27th day of August, 2010.

_Frederick J. Martone_

Frederick J. Martone
United States District Judge